IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | CHAPTER 7 |
| BRIAN K. HOFFMAN, | * | |
|     Debtor | * | |
| | * | |
| ROBERTA DeANGELIS, | * | CASE NO. 1:07-03771MDF |
| ACTING UNITED STATES TRUSTEE, | * | |
|     Plaintiff | * | |
| | * | |
| vs. | * | |
| | * | |
| BRIAN K. HOFFMAN, | * | |
|     Defendant | * | |

**OPINION**

This matter is before the Court on the Motion of the United States Trustee ("UST") to dismiss the within case under 11 U.S.C. §707(b)(3) of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 ("BAPCPA"). For the reasons that follow, I will grant the motion.

**Factual Findings and Procedural History**

Brian K. Hoffman ("Debtor") filed a chapter 7 petition on November 28, 2007. He is thirty-three (33), single, has no dependents, and lives with his girlfriend in a home that he owns in Hanover, Pennsylvania. Debtor and his former wife purchased the home in October 2003 for approximately $232,000.00, and it is valued on Debtor's schedules at $285,000.00. Debtor obtained sole title to the home as part of the property settlement in connection with his divorce. On the date of the filing of the petition, the residence was subject to first and second mortgageS with an aggregate balance due of $296,708.00. The monthly payments on the two mortgages total $2,272.00. When real estate taxes are included, Debtor has a total monthly housing expense of $2,338.00. Including his housing expenses, as reported on his amended schedule "J," Debtor's

current monthly expenses are $4,904.90. Therefore, Debtor's housing expenses accounts for 48% of his monthly budget.

Debtor is employed as an "Auto Technician" in Linthicum, Maryland. His monthly net income from his employment is $4,982.29.[1] In addition to his earned income, Debtor's schedule "I" showed additional monthly income of $271.08 from tax over-withholdings and $78.30 from Debtor's live-in girlfriend.[2] These two other amounts were added to Debtor's base monthly income of $4,982.29 to calculate the total net monthly income of $5,331.67 for Debtor's household.

The Court notes that the evidence presented at the hearing regarding Debtor's earnings was less than crystalline. Debtor received a raise less than two weeks before he filed his petition that was not included in Debtor's income calculation, but was considered by the UST when the Motion to Dismiss was filed. Although in the pleadings the UST advanced a base monthly income of $4,982.29, at various points in the hearing, the UST stated that the base monthly income was $4,979.00 (*See, e.g.*, N.T. 25).

In July 2006, Debtor was severely injured in a motorcycle accident, suffering fractures to his back, ribs, legs and hips. As a result, he was unable to work for approximately three (3) months. Debtor was uninsured at the time of the accident. All but $7,600.00 of the $139,638.09

---

[1] Monthly net income was calculated based on a pay advice introduced into evidence at the hearing showing weekly income of $1,149.76. When Debtor's weekly net income is multiplied by 52 it shows that he has an annual income of $59,787.52. By then dividing the annual income by twelve, a "base" monthly income of $4,982.29 is demonstrated.

[2] Debtor testified that his girlfriend did not contribute to household expenses, but this representation was contradicted by his representation on schedule "I" that she contributed $78.30 to the support of the household.

in unsecured debt listed on Debtor's schedules was incurred for medical expenses related to treatment Debtor received after the motorcycle accident.

On the date of his petition, Debtor owned certain Snap-on tools and two toolboxes, which he testified were worth approximately $15,000.00. Neither the tools nor the toolboxes were reported on Debtor's schedules. Debtor testified that these items were omitted from his schedules because they were used in his work and were not household goods. After filing his case Debtor sold one of the toolboxes with an estimated value of $4,000.00 for $1,500.00.

On March 21, 2008, the UST filed the motion *sub judice* to dismiss the case under 11 U.S.C. § 707(b)(1) and (3). A hearing was held on the motion on April 14, 2008, and the matter is ready for decision.[3]

## Discussion

Section 707(b)(1) of BAPCPA provides that "the court . . . may dismiss a [chapter 7] case . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter. 11 U.S.C. §707(b)(1). When deciding whether granting relief would be abuse of the Bankruptcy Code, a court must consider: (1) whether the case was filed in bad faith or (2) whether "the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3).

Prior to the enactment of BAPCPA, when a motion to dismiss under § 707(b) was filed, the burden of proof was on the UST to demonstrate *substantial* abuse by a preponderance of the evidence. *In re Miller*, 335 B.R. 335 (Bankr. E.D. Pa. 2005). Not only was the UST required to

---

[3] I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A) and (J). This Memorandum Opinion and Order constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 7052, which is applicable to contested matters pursuant to FRBP 9014.

3

prove that the abuse was substantial, there also was a statutory presumption in favor of granting relief to a chapter 7 debtor. As amended by BAPCPA, the Bankruptcy Code no longer incorporates a presumption in favor of granting relief and abuse, if found, no longer is required to be substantial. 11 U.S.C. § 707(b)(1). Nonetheless, the burden remains with the UST to prove that the Debtor's filing constitutes an abuse of the bankruptcy process. *See In re Colgate*, 370 B.R 50, 57 (Bankr. E.D.N.Y. 2007).

Before the passage of BAPCPA, once the UST demonstrated that a debtor had the ability to make a significant payment on his unsecured debt, the burden shifted to the debtor to demonstrate that granting relief would not be a substantial abuse of the bankruptcy system. I concur in Judge Sigmund's observation that there is nothing in the statute or its legislative history that suggests that this shifting in the burden has been altered. *In re Lenton*, 358 B.R. 651, 664 -65 (Bankr. E.D. Pa. 2006). Although the Bankruptcy Courts are not in agreement as to whether a debtor's ability to pay alone may justify dismissal under § 707(b)(3), there is overwhelming support for consideration of this factor within an analysis of the totality of the circumstances. *See In re Zaporski*, 366 B.R. 758, 771 (Bankr. E.D. Mich. 2007) (§ 707(b)(3)(B) does not preclude consideration of ability to pay in totality of circumstance analysis)*; In re dePellegrini*, 365 B.R. 830, 833-34 (Bankr. S.D. Ohio 2007) (ability to pay may be considered but does not dictate dismissal if other factors weigh against it); *In re Pfiefer*, 365 B.R. 187, 193 (Bankr. D. Mont. 2007) (debtor's ability to pay is important factor under § 707(b)(3)); *In re Henebury*, 361 B.R. 595, 607 (Bankr. S.D. Fla. 2007) (ability to pay alone is sufficient to warrant dismissal); *In re McUne*, 358 B.R. 397 (Bankr. D. Or. 2006) (debtor's ability to pay a portion of unsecured debts may be considered as part of the totality of the circumstances of debtor's financial situation); *In re Paret*, 347 B.R. 12 (Bankr. D. Del. 2006) (totality of circumstances test

4

includes consideration of ability to pay); *In re Pak*, 343 B.R. 239, 244 (Bankr. N.D. Cal. 2006) (debtor's ability to repay debts may be considered as part of the totality of circumstances of his financial situation).

In a pre-BAPCPA decision rendered by this Court, *In re Miller,* 302 B.R. 495 (Bankr. M.D. Pa. 2003), I adopted the "hybrid approach" to analyze the totality of the circumstances under § 707(b) used by the Sixth Circuit in *In re Krohn,* 886 F.2d 123, 126 (6th Cir. 1988). In *Krohn*, the Sixth Circuit considered a variety of factors in its analysis, but it also held that a case may be dismissed solely because the debtor has the means to repay his debts, although dismissal is not mandated on this factor alone. In *Miller,* I used the *Krohn* test supplemented with additional factors considered by the Fourth Circuit in *In re Green*, 934 F.2d 568 (4th Cir. 1991). The factors applied in *Miller* included: (1) whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment; (2) whether the debtor made consumer purchases far in excess of his ability to repay; (3) whether the debtor's proposed family budget is excessive or unreasonable; (4) whether the debtor's schedules and statements of current income and expenditures reasonably and accurately reflect his true financial condition; (5) whether the bankruptcy petition was filed in bad faith; (6) whether the debtor had engaged in eve of bankruptcy purchases; (7) whether the debtor enjoys a stable source of future income; (8) whether he is eligible for adjustment of his debts through chapter 13 of the Bankruptcy Code; (9) whether there are state remedies with the potential to ease his financial predicament; (10) the degree of relief obtainable through private negotiations; and (11) whether the debtor's expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities. *In re Miller*, 302 B.R. at 499.

In *Miller*, I indicated that although I would examine the totality of the circumstances, an ability to repay debt need not be accompanied by proof of misconduct, impropriety or bad faith for the filing of the petition to constitute substantial abuse. *Id.* Although *Miller* was decided before the enactment of BAPCPA, this approach is consistent with the specific statutory provisions of § 707(b)(3), which provide that bad faith and the totality of the circumstances are separate, distinct bases for a finding of abuse. Therefore, when considered within the totality of the circumstances, a case may be dismissed on the sole basis that a debtor has the means to repay his debts, although dismissal is not mandated on this factor alone.[4] Accordingly, I will apply the factors I considered in *Miller* to the evidence presented in the within case.

    a.    *Factors that do not support a finding of abuse*

In the two years prior to the filing of his bankruptcy petition, Debtor experienced two significant financial setbacks. He was divorced, and he was injured in a serious motor vehicle accident. The occurrence of only one of these events often is the precipitating cause for a bankruptcy filing. Thus, Debtor's divorce and injury were calamities that justified Debtor seeking relief under the Bankruptcy Code. Also, Debtor did not engage in practices prior to filing for bankruptcy that demonstrate bad faith. No evidence was presented that Debtor made consumer purchases far in excess of his ability to repay, that he engaged in eve-of-bankruptcy purchases and, other than his mortgage payments, that his proposed budget was excessive or unreasonable.

---

[4]At least one bankruptcy decision issued after the passage of BAPCPA, *In re Nockerts, supra*, has held that because of the addition of means testing for abuse under 11 U.S.C. § 707(b)(2), something in addition to the ability to pay must be present to warrant dismissal under the totality of the circumstances analysis under § 707(b)(1) and (3). I disagree. Simply because Congress established financial thresholds at which abuse is to be presumed under §707(b)(2) does not preclude a court from determining that a debtor's ability to pay demands dismissal of a case under § 707(b)(3)(B).

b.  *Factors that support a finding of abuse*

Debtor's schedules and statements of current income and expenditures, while not woefully deficient, failed to reflect his true financial condition. The UST established through the admission of Debtor's payment advice for the period ending February 8, 2008 that Debtor's monthly income was $5,331.67 ($4,982.29 in base income plus additional income as reported on schedule "I").  Debtor, however, was unable to explain why the income was only reported at $4,973.89.  Other deficiencies in the schedules were present as well. Although not directly related to the issue of disposable income, Debtor omitted from his schedules tools and two toolboxes that he used in connection with his work.

The Court also considers that Debtor is eligible for adjustment of his debts through chapter 13.  He enjoys a stable and relatively lucrative source of future income.  The UST has established that Debtor's post petition income exceeds his monthly expenses by at least $426.77 ($5,331.67 - $4,904.90).  Thus, Debtor is capable of funding a chapter 13 plan.[5]

The UST argues, however, that Debtor could provide an even greater return to creditors if his excessive housing costs were reduced. In support of this position, the UST points to the standard housing allowance for York County, Pennsylvania promulgated by the Internal Revenue Service ("IRS"), which is used by the IRS when compromising an individual's tax liability and which has been grafted onto the Bankruptcy Code through the means test calculation set forth in § 707(b)(2). The standard monthly housing allowance for a single-person household in York County is $983.00.  Therefore, if this standard were applicable, Debtor's expenses could be

---

[5]For purposes of estimating the total plan payout, payments of $400.00 for sixty (60) months would yield approximately $24,000.00 (less the Trustee's commission) for unsecured creditors. A payout of $24,000 on unsecured debt of almost $140,000.00, however, would produce less than a 17% return to unsecured creditors.

7

Case 1:07-bk-03771-MDF    Doc 65    Filed 09/22/08    Entered 09/23/08 13:26:16    Desc
Main Document      Page 7 of 10

reduced significantly. The UST does not suggest that this standard is binding on the Court, but that it should be used as a reference when determining whether Debtor's expenses are reasonable.

The use of IRS standards in the § 707(b)(3) context has been addressed recently by several bankruptcy courts. *See In re Talley*, 389 B.R. 741 (Bankr. W.D. Wash. 2008) (abuse found where housing expense three times the IRS standard); *In re Kaminski*, 387 B.R. 190 (Bankr. N.D. Ohio 2008) (abuse found where housing expense more than twice the IRS standard); *but see In re Seeburger*, ___ B.R. ___ 2008 WL 3414137 (Bankr. N.D. Ohio, August 8, 2008) (IRS standards of minimal value in determining reasonableness of mortgage expense). In *Kaminski*, the debtors, a married couple with two children, had net household income of $6,058.35 and monthly expenses of $6,297.19. Their monthly housing expense, comprising a mortgage payment, taxes and insurance, was $1,856.16. The relevant IRS housing expense standard for the debtors was $841.00 per month. While finding that it was not bound by the IRS standards, the bankruptcy court determined that the standards were useful as a guideline when assessing whether a debtor's housing expense was reasonable and necessary. The Court observed:

> [T]he goal of the IRS housing allowance generally aligns itself with the Court's aim in a § 707(b)(3) analysis: to ensure that a debtor, while afforded with the means by which to obtain adequate shelter, is not devoting excessive financial resources toward their housing to the detriment of the debtor's creditors. . . . [T]herefore, when a debtor's housing allocation significantly exceeds the IRS allowance, a viable justification for the necessity and reasonableness of that housing expense should be offered.

*In re Kaminski*, 387 B.R. at 196 (citation omitted). *See also In re Nissen*, 2007 WL 2915648, 3 (Bankr. D. Neb. Aug. 21, 2007) (§ 707(b) motions granted in part because debtors could substantially reduce housing expense without being deprived of adequate housing or other

8

necessities).⁶ In *Kaminski* the court determined that the housing expense was excessive considering the debtors' failure to articulate any special circumstances to justify the expense.

I find *Kaminski*'s observation to be persuasive. While this Court is loathe to impose subjective personal standards on individual debtor's choices (*see Miller*, 302 B.R. at 500), it is not unreasonable to expect a debtor to provide a reasonable explanation for choices that detrimentally impact the creditors whose debts will be discharged. Such an expectation is in keeping with the shifting burden of proof referenced in *Lenton*, *supra*. Debtor's only justification for retaining his home was that he was "proud of it." Debtor's rationale is insufficient to overcome the evidence presented that he is dedicating an unreasonable amount of his income to maintain this investment to the detriment of his creditors. This is especially true when considering that Debtor has no equity in the property.

Thus, while Debtor is not required to reduce his housing expense to the IRS standard of $983.00 a month, Debtor's current monthly housing expense of $2,338.00 is excessive. Although I decline to dictate a precise amount that the Court would find to be reasonable, if Debtor spent even twice the IRS standard, he would have approximately $800.00 a month to devote to repaying his creditors. Accordingly, based upon a consideration of the totality of the circumstances, I find that the filing of this case constitutes an abuse of chapter 7. An order will

---

⁶*But see In re Beitzel*, 333 B.R. 84 (Bankr. M.D. N.C. 2005) (Chapter 7 debtor's housing expense was reasonable, for purposes of determining whether his case should be dismissed for "substantial abuse" of the Bankruptcy Code, where debtor only used 36% of his monthly income to pay his mortgages, size of house, 2,000 square feet, was not large for a family of five, it was unlikely that debtor would be able to find suitable housing for his family that would cost significantly less than his current home, debtor and his family had lived in the house for over four years, and the disruption caused by moving would have constituted an undue hardship on them). None of the factors present in *Beitzel* are relevant in the within case.

be entered dismissing the case unless Debtor elects to convert the case to chapter 13 as set forth in the Order issued in connection with this Opinion.[7]

By the Court,

*/s/ Mary D. France*
Bankruptcy Judge

Date: September 22, 2008

*This document is electronically signed and filed on the same date.*

---

[7]The UST has advanced the argument that Debtor's failure to obtain health insurance when it was offered by his employer, which, presumably, would have satisfied many of his unsecured claims, constituted evidence of abuse under §707(b)(3). While I apprehend the UST's argument, I am disinclined to find that a debtor may be rendered ineligible for chapter 7 relief because his actions proved foolhardy – even catastrophically so – in retrospect. The bankruptcy's safety net was created to enable persons to rehabilitate themselves not only after they suffer misfortune not of their own making, but also after they make unwise choices. I cannot perceive how the denial of relief under these circumstances would serve either of bankruptcy's purposes – a fresh start for the honest, but unfortunate (albeit, unwise) debtor and the equal and fair treatment of creditors.